# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Maurice Harris,

        Plaintiff,

v.

Laurie Hammon, in her individual and
official capacity; Debbie Cole, in her
individual and official capacity; Tom
Roy, Minnesota Commissioner of
Corrections, in his official capacity; and
Ramsey County;

        Defendants.

Civ. No. 11-3497 (DSD/JJK)

**REPORT AND
RECOMMENDATION**

---

Bradford W. Colbert, Esq., Legal Assistance to Minnesota Prisoners; and Zorislav
R. Leyderman, Esq., The Law Office of Zorislav R. Leyderman, counsel for
Plaintiff.

Scott A. Grosskreutz, Esq., Minnesota Attorney General's Office, counsel for
Defendants Hammon, Cole and Roy.

C. David Dietz, Esq., Ramsey County Attorney's Office, counsel for Defendant
Ramsey County.

---

JEFFREY J. KEYES, United States Magistrate Judge

       This case is before the Court on Defendants' Hammon, Cole, and Roy's

Motion for Judgment on the Pleadings (Doc. No. 13), and Defendant Ramsey

County's Motion for Summary Judgment (Doc. No. 19).   The matter has been

referred to the undersigned for a Report and Recommendation pursuant to

28 U.S.C. § 636, and D. Minn. LR 72.1.   For the reasons stated below, this Court

recommends that Defendants' Hammon, Cole, and Roy's (the "DOC Defendants'") motion be granted in part and denied in part, and that Defendant Ramsey County's motion be granted.

## BACKGROUND

The following facts are set forth in Plaintiff's Complaint. This Court assumes, for purposes of these motions, that these facts are true.

On May 29, 2009, Plaintiff was found guilty of Possession of Firearm by an Ineligible Person, in Ramsey County District Court. Plaintiff was sentenced to a term of 60 months imprisonment and committed to the Minnesota Commissioner of Corrections to serve his sentence. On November 23, 2009, Plaintiff initiated an appeal of his conviction with the Minnesota Court of Appeals. Plaintiff filed his appellate brief on July 8, 2010, arguing that his conviction should be reversed, and on September 1, 2010, the State of Minnesota responded by conceding that Plaintiff's conviction should be reversed on appeal.

Plaintiff then filed a motion in Ramsey County District Court on October 6, 2010, requesting that he be released from the custody of the State of Minnesota and the Minnesota Department of Corrections ("DOC") pending the outcome of his appeal. On October 14, 2010, the Honorable Kathleen R. Gearin, Ramsey County District Court Judge, issued an order in response to Plaintiff's motion. Judge Gearin's order stated, in relevant part, that: (1) "[Plaintiff] shall be released pending the resolution of the appellate process," (2) "the Minnesota Department of

Corrections shall release [Plaintiff] to the custody of the Ramsey County Sherriff," (3) "[t]he Ramsey County Sheriff shall make arrangements for [Plaintiff] to be transported to the Ramsey County Jail," and (4) after Plaintiff "has been brought to the Ramsey County Jail, a hearing shall be held wherein the conditions of release will be established." (Doc. No. 1, Compl. ¶ 13; Doc. No. 27, Affidavit of Zorislav R. Leyderman ("Leyderman Aff.") ¶ 3, Ex. 2.) Plaintiff was transported from the Minnesota Department of Corrections, Lino Lakes Correctional Facility, to the Ramsey County Jail on or about October 18, 2010.

A release hearing was held on November 4, 2010, during which Ramsey County District Court Judge Robyn Millenacker ordered that Plaintiff be immediately released from the custody of the Ramsey County Sheriff. On November 4, 2010, at approximately 9:45 a.m., Judge Millenacker's clerk sent a "custody status update" email to the Ramsey County Sheriff's Office which stated that Plaintiff was to be immediately released from custody subject to the conditions imposed by Judge Millenacker. Judge Millenacker's clerk received a confirmation email from the Ramsey County Sheriff's Office shortly after 10:00 a.m. But instead of releasing him from jail, the Ramsey County Sheriff's Office transferred Plaintiff back to the custody of the Minnesota Department of Corrections, at the Lino Lakes Correctional Facility.

The next morning, on Friday, November 5, 2010, Plaintiff's attorney Ted Sampsell-Jones contacted Judge Millenacker when he found out that, despite her

3

order, Plaintiff had not been released but had been sent back to state prison.
Judge Millenacker then mailed and faxed her release order to the Department of
Corrections Lino Lakes Facility so that the officials at the prison would have notice
that Plaintiff was ordered released.   And Sampsell-Jones began to try to
effectuate Plaintiff's immediate release from Lino Lakes so that Plaintiff would not
have to spend the weekend incarcerated.   For example, throughout the morning
and early afternoon, Sampsell-Jones telephoned Defendant Debbie Cole, an
official at Lino Lakes, but she did not answer her phone; he left a message on
Cole's answering machine at about 11:00 a.m.   He learned at 2:00 p.m. that Cole
had left for the day without returning his call or responding to his voicemail
message, but he found out that Defendant Laurie Hammon, another Lino Lakes
official, was handling Plaintiff's release.

Sampsell-Jones was not the only one trying to get Plaintiff released.   Judge
Millenacker's law clerk telephoned Hammon that day informing her that Plaintiff
must be released pursuant to Judge Millenacker's order.   Thus, not only did the
Lino Lakes facility receive a copy of the order by fax, but Hammon was put on
notice of the release order by the Judge's clerk.   However, Hammon told Judge
Millenacker's clerk that she needed a certified copy of the order before Plaintiff
would be released.

After 2:00 p.m., Sampsell-Jones had a series of conversations with
Hammon in which he told her that Plaintiff was being unlawfully detained, that he

4

had been calling to get Plaintiff out all day and that no one had responded to or returned his calls.   When Hammon told Sampsell-Jones that she needed a certified copy of the release order, Sampsell-Jones offered, at approximately 2:55 p.m., to hand-deliver a copy of the release order to Lino Lakes that same afternoon so that Plaintiff could be released before the weekend.   Hammon responded by saying "can you be here in three minutes?"   (Doc. No. 1, Compl. ¶ 22.)   Hammon refused to wait for Sampsell-Jones to deliver a certified copy of Judge Millenacker's release order and also refused to release Plaintiff based on the fax sent to Lino Lakes by the Judge.   So, despite the release order, Plaintiff spent the weekend incarcerated at Lino Lakes.

Sampsell-Jones' frustrations continued the next week.   On Monday, November 8, 2010, he contacted the Ramsey County Sheriff's Office to find out why Plaintiff was sent to Lino Lakes on Thursday, November 4, in violation of the court's immediate release order, and he was told that Plaintiff was sent back to Lino Lakes because he was "out on a writ" (which was not the case). Sampsell-Jones also continued his attempt to convince Hammond to release Plaintiff from Lino Lakes but she continued to insist that a certified copy of Judge Millenacker's order be presented.

On Tuesday morning, November 9, 2010, Sampsell-Jones again tried to contact Cole but she did not return his calls or respond to his voicemail message. At about noon, however, Cole telephoned the Minnesota State Appellate Public

Defender's Office and admitted that Lino Lakes had received the certified copy of Judge Millenacker's release order but the prison staff was confused because it was "highly unusual." Sampsell-Jones later telephoned Cole again. Finally reaching her, he explained that Plaintiff was being unlawfully detained and was not out on a writ and that he should have been released on November 4 per the court's release order. Cole responded by changing what she had told the public defender's office about the D.O.C. receiving a certified copy of the order. Now she said that a certified copy had not been received and that Plaintiff would not be released until it was received. When Sampsell-Jones talked to Hammon later that day, she also said that the certified copy had not been received and Plaintiff would not be released.

Sampsell-Jones again told both Hammon and Cole that he would personally deliver a certified copy of the release order to Lino Lakes later that same day to get Plaintiff released. However, both Hammon and Cole told him that he should not bother driving out to Lino Lakes because Plaintiff may not be released even after the certified copy of the order was received because the order may be invalid. Sampsell-Jones was not deterred. He drove out to Lino Lakes and handed a certified copy of the order to Cole. Later, Cole left Sampsell-Jones a voicemail stating that Plaintiff would be released, and Plaintiff was finally released late in the day on November 9, 2010.

In this case, Plaintiff contends that the Defendants "held the person of

6

Maurice Harris incarcerated for approximately five days and five hours (125 hours) beyond his court-ordered release date, violating his rights under the Eighth and Fourteenth Amendments to the United States Constitution, and that the named Defendants also committed the torts of false imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress against Mr. Harris under Minnesota state law." (Doc. No. 1, Compl. ¶ 2.) Plaintiff seeks money damages and injunctive relief against Defendants Cole and Hammon in both their official and individual capacities as employees of the Minnesota Department of Corrections and against Defendant Tom Roy, Minnesota Commissioner of Corrections, in his official capacity only. Plaintiff seeks injunctive relief only against Defendant Ramsey County.

Ramsey County moves for summary judgment dismissing the claims against it. Defendants Cole, Hammon, and Roy move for judgment on the pleadings on the federal claims asserted against them and they request that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

## DISCUSSION

### I.  Ramsey County's Motion for Summary Judgment

#### A.  Standard of Review

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence, and the inferences that may be

reasonably drawn from the evidence, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009); *Carraher v. Target Corp.*, 503 F.3d 714, 716 (8th Cir. 2007). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 322; *Whisenhunt v. S.W. Bell Tel.*, 573 F.3d 565, 568 (8th Cir. 2009). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). In other words, a party opposing a properly supported motion for summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see Davenport v. Univ. of Ark. Bd. of Trustees*, 553 F.3d 1110, 1113 (8th Cir. 2009) (citing *Anderson*, 477 U.S. at 247–49); *see also Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872–73 (8th Cir. 2005) ("A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a

finding in his favor."), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc).

## B. Dismissal of the Federal Claim against Ramsey County

A municipality is subject to liability under § 1983 only when the violation of the Plaintiff's federally protected right can be attributable to the enforcement of a municipal policy, custom, practice, or decision of a final municipal policymaker. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 694 (1978). To establish the existence of a municipal custom, a plaintiff must show:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> (3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, i.e., [proof] that the custom was the moving force behind the constitutional violation.

*Ware v. Jackson Cnty.*, 150 F.3d 873, 880 (8th Cir. 1998) (quotations omitted). Therefore, in order for Ramsey County to be held liable for a § 1983 violation in this case, Plaintiff must prove, among other things, that there exists a "continuing, widespread, persistent pattern of constitutional misconduct." *Jenkins v. Cnty. of Hennepin*, 557 F.3d 628, 634 (8th Cir. 2009).

Plaintiff bases his *Monell* claim against Ramsey County on his contention that Ramsey County failed to adequately train the jail employees about releasing

9

detainees in response to court orders. Plaintiff alleges that there must have been a failure to train that gives rise to municipal liability because Ramsey County jail deputies sent Plaintiff back to Lino Lakes instead of releasing him. However, even when viewing the evidence most favorably to Plaintiff, this Court cannot reasonably infer that this was anything but a single incident. Plaintiff does not describe any widespread conduct on the part of Ramsey County employees in which they were, for example, disobeying court orders and refusing to release prisoners or sending them off to the Department of Corrections instead of releasing them. Nor does he set forth any facts from which this Court can infer that high-ranking officials made a decision to act in a way that violated Plaintiff's constitutional rights and from which this Court could conclude that governmental policy was carried out. In fact, Plaintiff has not come forward in response to Defendant's summary judgment motion with any evidence (other than the single incident) from which this Court could conclude that there was a triable issue about whether Ramsey County had a policy or custom where its use or implementation amounted to the deliberate indifference of Plaintiff's constitutional rights. In other words, no reasonable inference can be drawn from the Ramsey County deputies' conduct in this case that there was a failure to train that amounted to deliberate indifference to Plaintiff's rights. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989) ("We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate

indifference to the rights of persons with whom the police come into contact.").

Plaintiff argues that he is entitled, on the basis of the single incident alleged, to engage in discovery to find out whether Ramsey County was deliberately indifferent in training employees "on orders for immediate release or on how to handle DOC inmates who are ordered to be immediately released from custody." (Doc. No. 30, Rule 56(d) Aff. of Zorislav R. Leyderman ("Rule 56(d) Leyderman Aff.") ¶¶ 9–10.) But, if this were true, then any plaintiff who alleged that his constitutional rights were violated in an incident involving the police would be entitled, without more, to use the discovery process to see if he could put together a failure to train claim. Further, while there may be single incidents of police misconduct that by their nature show that "the need for more or different training was so obvious, and the inadequacy so likely to result in the violation of constitutional rights" as to amount to a municipal policy of deliberate indifference to citizens' constitutional rights, the incident alleged here is not such an incident. *Harris*, 489 U.S. at 390.

Plaintiff also asserts that the *Monell* claim against Ramsey County should not be dismissed because "discovery in this case is necessary to allow Plaintiff to determine the names" of the Ramsey County Deputies who were involved in this matter so that he can "amend his Complaint to add these Deputies as defendants." (Rule 56(d) Leyderman Aff. ¶ 16.) But this is of course not an adequate justification for continuing claims against a municipality that have no lawful basis in

11

the first place.[1]

Accordingly, because Plaintiff has not demonstrated the existence of specific facts in the record that create a genuine issue for trial as to one of the required elements of a *Monell* claim, his *Monell* claim against Ramsey County should be dismissed, and Ramsey County's motion for summary judgment on that claim should be granted.

### C.    Supplemental Jurisdiction

In addition to the § 1983 claim, Plaintiff has also asserted state-law claims for false imprisonment, intentional inflection of emotional distress, and negligent infliction of emotional distress against Ramsey County.   Since this Court recommends dismissal of the federal claim against Ramsey County, the claim over which this Court has original jurisdiction, this Court also recommends that the Court decline to exercise supplemental jurisdiction over these state-law claims. *See Jenkins v. Hennepin Cnty.*, No. 06-3625 (RHK/AJB), 2007 WL 2287840, at *8

---

[1]     Ramsey County alternatively argues that the deputies who were involved here would be immune from suit because of the doctrine of qualified immunity and, as a result of the qualified immunity of those employees, Ramsey County is also immune from the municipal liability *Monell* claim.   But a municipality does "not enjoy immunity from suit—either absolute or qualified—under § 1983." *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993); *Owen v. City of Independence*, 445 U.S. 622, 638 (1980) ("[T]he municipality may not assert the good faith of its officers or agents as a defense to liability under § 1983.")   As far as the individual deputies—unidentified non-parties who have not been sued—are concerned, this Court is not going to give an advisory ruling on a qualified immunity defense they might have if they were sued.

(D. Minn. Aug. 3, 2007) (stating that "[w]hen a district court dismisses a claim over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over state-law claims that are related to that federal claim" (citing 28 U.S.C. § 1367(c)(3) and *ACLU v. City of Florissant*, 186 F.3d 1095, 1098–99 (8th Cir. 1999))).   Thus, Ramsey County's motion for summary judgment should be granted and all claims against Ramsey County should be dismissed from this case.

## II.   D.O.C. Defendants' Motion for Judgment on the Pleadings

### A.   Standard of Review

In reviewing a motion for judgment on the pleadings under Rule 12(c), a court applies the same standard used in reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).   *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).   Under this standard, the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.   *Id.*   Although the factual allegations in the complaint need not be detailed, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570   2007)).

### B.   Official-Capacity Claims

Plaintiff has brought § 1983 claims against Debbie Cole, Laurie Hammon, and Minnesota Commissioner of Corrections Tom Roy in their official capacities for

13

injunctive relief.[2]  He seeks a court order requiring the DOC Defendants to "provide training for its employees on the Minnesota Rules of Criminal Procedure and the meaning of an order for release pending appeal under Minn. R. Crim. P. 28.02."  (Doc. No. 1, Compl. 12.)  Plaintiff asserts that this injunctive remedy "is necessary to ensure that DOC employees do not unlawfully detain Mr. Harris or other inmates in the future, as they did in this case, and to prevent present and future violations of federal law by the DOC and its employees."  (Doc. No. 26, Pl.'s Mem. 11–12.)

Absent consent or Congressional enactment to the contrary, the Eleventh Amendment immunizes states from suits filed against them in federal court.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court.").  While the Eleventh Amendment expressly applies to actions against states by citizens of other states, the Supreme Court has construed the Eleventh Amendment to also bar suits in federal court against a

---

[2]  Plaintiff does not seek monetary damages against these Defendants on his official-capacity claims.  (Doc. No. 26, Pl.'s Mem. in Opp'n to Defs.' Hammon, Cole and Roy's Mot. for J. on the Pleadings ("Pl.'s Mem.") 11 ("Mr. Harris concedes that the Eleventh Amendment bars any claim for money damages against the DOC Defendants sued in their official capacities.").)  Plaintiff did, however, bring suit against Hammon and Cole in their individual capacities for monetary damages. The Eleventh Amendment does not bar suits for money damages against state officials in their individual capacities.  *Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997).  The individual-capacity claims against Hammon and Cole are discussed below.

state by its own citizens. *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). Moreover, the immunity afforded a state in federal court extends to state officials when "the state is the real, substantial party in interest." *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002). "The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam). Thus, regardless of the relief sought, a suit against state officials that is in fact a suit against a state is barred in the same way it would be barred if the state was the named defendant. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984).

In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized an exception to Eleventh Amendment immunity permitting suits in federal court against state officials when the relief sought is only injunctive, but the exception is limited:

> In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of that act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.

*Id.* at 157. Therefore, the exception only applies against officials "who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal

Constitution." *Id.* at 156. To determine whether a plaintiff has alleged a proper *Young* claim for injunctive relief the court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring)).

Plaintiff's claim for injunctive relief must fail because Plaintiff has not set forth any plausible claim that Commissioner Roy or the other DOC Defendants have threatened to violate Plaintiff's constitutional rights (or anyone else's constitutional rights) by unlawfully detaining Plaintiff in the future. Once Plaintiff was released from custody on November 9, 2010, there was no longer a substantial immediate threat that he would again be harmed and, therefore, the requested injunctive relief is moot. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (finding a prisoner's claim for injunctive relief to improve prison conditions was moot because there was not a substantial immediate threat of harm after the prisoner was transferred and no longer subject to those conditions). Plaintiff does not allege any plausible claim that Roy, Hammon, or Cole are now engaged in an ongoing violation of federal law. Accordingly, the exception to Eleventh Amendment immunity does not apply, and Plaintiff's § 1983 claims against Cole, Hammon, and Roy in their official capacities for injunctive relief are barred by Eleventh Amendment immunity.

This Court notes that the only federal claim asserted against Commissioner Roy is this claim for injunctive relief, which this Court recommends be dismissed. It is not clear from the Complaint whether Plaintiff is also suing Commissioner Roy for state-law violations.  For example, although Plaintiff labels his counts for intentional infliction of emotional distress and negligent infliction of emotional distress as "against all Defendants," he only describes alleged wrongdoing by Defendants Hammon and Cole (as well as Ramsey County) in the body of the Complaint in which he describes these torts.  (Doc. No. 1, Compl. ¶¶ 57–62.) Nevertheless, under 28 U.S.C. § 1367(c)(3), this Court also recommends that the Court decline to exercise supplement jurisdiction over any state-law claims asserted against Commissioner Roy and dismiss him as a party to this suit.  *See ACLU*, 186 F.3d at 1098–99.

### C.  Individual-Capacity Claims against Defendants Cole and Hammon

Plaintiff has also brought damages claims against Defendants Cole and Hammon asserting that they are liable in their individual capacities for violating his constitutional rights.  Cole and Hammon argue that they are entitled to judgment on the pleadings dismissing these individual-liability claims because of their qualified immunity from suit.  Qualified immunity shields government officials from liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982).   There are two factors a court considers in a qualified immunity analysis under § 1983: (1) whether the facts alleged show that the public official's conduct violated a constitutional right; and (2) whether the constitutional right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).   The order in which these two factors are addressed is left to the discretion of the court conducting the review. *Id.* at 236.

This Court concludes that there are fact issues to be litigated with regard to qualified immunity that preclude the dismissal of the § 1983 individual-liability claims asserted against Cole and Hammon.   This Court is guided in its analysis of the qualified-immunity issue by *Davis v. Hall*, 375 F.3d 703 (8th Cir. 2003).   In *Davis*, the plaintiff raised the same constitutional claim that Plaintiff asserts here – that he was deprived of his Fourteenth Amendment Due Process right to liberty when he continued to be confined in person after his release was ordered by the court.   There, the Eighth Circuit analyzed the requisite two factors in deciding whether the defendant prison officials were entitled to qualified immunity, first addressing whether the official's conduct violated a constitutional right and then moving on to whether that constitutional right was clearly established.

### (i)    Constitutional Right

In *Davis*, the court recognized that there is a liberty interest protected by the Fourteenth Amendment that is deprived when a prisoner continues to be confined

18

after his release is ordered by the court for a prolonged period of time. *Id.* at 712–13 (stating that the court has held "that even a thirty-minute detention after being ordered released could work a violation of a prisoner's constitutional rights under the Fourteenth Amendment.") The court cited several cases from various circuits, including its own, that have recognized this right. *Id.* at 714; *see also Slone v. Herman*, 983 F.3d 107, 110 (8th Cir. 1993) (stating that an inmate has a clearly established right to be released from prison once a judge's order suspending his sentence becomes final because "the state [has] lost its lawful authority to hold [him]" at that time).

The court in *Davis* also emphasized that it is a corollary of this constitutional right that the prison officials have a duty to effect the prisoner's timely release when they are on notice that the prisoner is entitled to be released. *Davis*, 375 F.3d at 716 ("Here, the evidence in the light most favorable to Davis shows that at least some of the state defendants were on notice that Davis was entitled to be released.") But the prolonged detention after release is ordered "does not rise to the level of a Fourteenth Amendment violation unless the defendants acted with the requisite state of mind." *Id.* at 718. In the context of prolonged detention after court ordered release, the standard used to determine whether there is the requisite state of mind is whether "the defendants were deliberately indifferent to [plaintiff's] plight." *Id.*; *see also Armstrong v. Squadrito*, 152 F.3d 564, 576 (7th Cir. 1998) ("[P]rison is the quintessential setting for the deliberate indifferent

19

standard because 'in the custodial situation in prison, forethought about an inmate's welfare is not only feasible but obligatory . . . .'" (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998))).

The issue of whether Cole's and Hammon's conduct in this case constituted deliberate indifference "is a classic issue for the fact finder." *Davis*, 375 F.3d at 719. And viewing the following facts in the light most favorable to Plaintiff, this Court concludes that a reasonable jury could find that Cole's and Hammon's conduct constituted the requisite level of deliberate indifference to violate Plaintiff's liberty rights under the Fourteenth Amendment.

After Plaintiff was transferred from Ramsey County jail to Lino Lakes prison on November 4, 2010, in violation of a court release order, Cole and Hammon had notice from reliable sources that Plaintiff was being unlawfully detained in violation of a court order. When Plaintiff's attorney, Ted Sampsell-Jones, found out on the morning of Friday, November 5, 2010, that Plaintiff had not been released from Ramsey County jail, but had instead been sent to Lino Lakes, he contacted Ramsey County District Court Judge Robyn Millenacker who, that same day, faxed (and mailed) her release order to the Lino Lakes Correctional Facility. Not only was the fax of the order sent, but Judge Millenacker's clerk also telephoned Hammon and informed her that Plaintiff must be released pursuant to the judge's order. In addition, throughout the prolonged period of incarceration, Sampsell-Jones told Cole and Hammon that Plaintiff was being unlawfully

incarcerated.

On November 5, 2010, Cole failed to respond at all to Sampsell-Jones' repeated telephone calls or his voice message about what was then Plaintiff's unlawful detention.   Then, when Hammon told Sampsell-Jones that a certified copy of the order was necessary, Sampsell-Jones said that he would hand-deliver it that afternoon; but Hammon, in what may reasonably be construed as an indifference to Plaintiff's rights to liberty, made a remark about how Sampsell-Jones would have to get the order to Lino Lakes in three minutes.   She did not offer to make any arrangements to have someone else at the prison receive the certified copy of the order after she left work (presumably at 3:00 p.m.) so that Plaintiff could be released before the weekend.

Again, viewing the evidence in the light most favorable to Plaintiff, it appears that the same attitude of indifference continued the next week when Sampsell-Jones continued his efforts to obtain compliance with the release order. Even when Sampsell-Jones said, on Tuesday, November 9, 2010 (the fifth day of unlawful incarceration), that he would bring out a certified copy of the order to Lino Lakes, Cole and Hammon both told him, without explanation, that Plaintiff may still not be released because the order may be invalid.   Hammond's and Cole's conduct hardly amounts to "forethought about an inmate's welfare" which, when the prisoner's liberty is at stake, is "not only feasible but obligatory."   *Lewis*, 523 U.S. at 851.

Cole and Hammon argue that they are entitled to qualified immunity because, even if they were mistaken about the need for a certified copy of the order, qualified immunity protects them from mistaken judgments or bad guesses. They say that releasing Plaintiff into the community without a certified copy of the order risked releasing a prisoner into the community based on a falsified or counterfeit order.[3]   However, it would have taken little for Hammon and Cole to have satisfied themselves about the veracity of the court order of release.   A phone call to the judge, or to the public defender's office, would have verified the information.   But it was not until Tuesday, November 9, 2010, that Cole finally made a call to the public defender's office.   Taken together, these facts establish that Plaintiff has raised a constitutional claim that Plaintiff's Fourteenth Amendment liberty interest was violated.

### (ii)    Clearly Established Right

In *Davis*, the court characterized the constitutional right in issue as "a protected liberty interest in being free from wrongful, prolonged incarceration."   *Id.* at 712.   That is the same constitutional right at issue in this case.   The next

---

[3]    Hammon and Cole do not present any law or DOC regulation that a certified copy of the order was in fact necessary for release.   Indeed, their counsel argues that "even if the certified copy of the order was not completely necessary" qualified immunity should still apply.   (Doc. No. 15, Mem. of Law In Supp. of Defs.' Hammon, Cole, and Roy's Mot. for J. on the Pleadings 7; *see also id.* ("At most, Hammon and Cole's request for a certified order before releasing Harris was a mistake in judgment or a bad guess in an uncertain area.")   This Court infers from this that the certified copy of the order was not necessary.

question that the court asks is whether that constitutional right alleged to have been violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989). The court in *Davis* concluded that by 2003, when *Davis* was decided, this constitutional right was clearly established not only in the Eighth Circuit but in other circuits as well. *Davis*, 375 F.3d at 719; *see also Young v. City of Little Rock*, 249 F.3d 730, 736 (8th Cir. 2001) ("The liberty of the individual is at stake here. A citizen had been arrested, erroneously as it turned out, and a court had ordered her released. The court's order had not been followed. Instead, a process of administrative foot-dragging took place, characterized by gross indignities."); *Slone*, 983 F.2d at 110 (stating that an inmate had a clearly established right to be released from prison once a judge's order suspending his sentence became final because at that point, "the state lost its lawful authority to hold Slone."). Of course, if the constitutional right at issue was clearly established before *Davis* in 2003, then *Davis* itself reinforced the clarity of that right for prison officials who were confronted with court release orders in 2010.

Even so, the analysis of whether the constitutional right was clearly established must focus on whether "it would be clear to a reasonable officer that his [or her] conduct was unlawful in the situation he [or she] confronted." *Saucier*,

533 U.S. at 202. Thus, the analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 201. For federal law to be clearly established there must be some similarities factually between the prior precedents and the case at hand so that the officials have fair warning that their actions were unconstitutional. However, the facts of the existing precedent need not be "materially similar" or "fundamentally similar" to those of the instant case. *Hope v. Pelzer*, 536 U.S. 730, 739–41 (2002).

The key facts that were present in *Davis* are also present here. Thus, this Court can plausibly infer from the facts in the Complaint, viewed in the light most favorable to Plaintiff, that Cole and Hammon had actual knowledge of the court order of release but prolonged Plaintiff's incarceration with deliberate indifference to Plaintiff's liberty interest. As in *Davis*, "[a] reasonable jury could also conclude" that Judge Millenacker, her law clerk, and Plaintiff's attorney informed Cole and Hammon of the release order "and that a reasonable person in their positions would know that their conduct in failing to act was unlawful." *Davis*, 375 F.3d at 719.

The facts in *Davis* are not, of course, exactly the same as the facts in this case, but they are not so dissimilar that the unlawfulness of Defendants' actions would not, in light of pre-existing law, have been apparent. *See Hope*, 536 U.S. at 739–41; *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that

what he is doing violates that right.   This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." (quotations omitted)).   Like Plaintiff, Davis was serving a prison sentence in a state prison where his conviction was reversed and he was transported to a county courthouse for further proceedings.   The trial court ordered that Davis be immediately released from county jail but he was transported back to the state prison four days later.   The release order was not provided to the state prison by the court or county officials, although Davis did have a copy in his possession.   When Davis returned to the prison he protested his continued incarceration but no one at the prison took his protest seriously.   He showed the release order to several officials but would not give it to them because it was the only proof he had that he was to be released.   Finally, fifty-six days after the release order was signed, a parole officer at the prison listened to Davis, took him seriously, and he was released the next day.

Although Plaintiff was not held as long as Davis, there are several facts alleged that suggest that Defendants' conduct was more egregious than the conduct of the officials in *Davis.*   For example, Cole and Hammon were directly contacted by the judge's law clerk and told about the release order; the order was faxed by the court to Lino Lakes by the court; Plaintiff's attorney repeatedly notified Defendants that Plaintiff was unlawfully held; and no reasonable accommodation

was made so that Plaintiff's attorney could deliver a certified copy of the order in time to release Plaintiff before the weekend.   The only notice that the prison officials in *Davis* had about the release order came from Davis himself, not from the court and counsel.   Although Plaintiff's wrongful incarceration was not as long as Davis', there is no bright line defining when an unlawful incarceration becomes unconstitutional.   The length of the detention is simply one element that the trier of fact will consider in its deliberate-indifference determination.   *Compare Young*, 249 F.3d at 733, 736 (upholding jury verdict that two and a half hour detention of wrongly arrested woman violated her constitutional rights), *with Jacobsen v. Mott*, No. 07-4420 (DWF/RLE), 2009 WL 113379, at *10 (D. Minn. Jan. 16, 2009) (concluding that "[plaintiff's] detention from late Saturday night until Monday does not shock the conscience sufficiently to establish a violation of the Due Process Clause").

To be sure, it may turn out that when the facts are developed in this case Defendants Cole and Hammon are entitled to qualified immunity because, for example, it may be shown that they were not deliberately indifferent to Plaintiff's incarceration but actually acted in an objectively reasonable manner that was not in violation of Plaintiff's constitutional rights.   But at this stage of the case, when the Court assumes that all the factual allegations in the Complaint are true and it views them in the light most favorable to Plaintiff, there is a plausible Fourteenth Amendment Due Process liberty claim asserted against Defendants Cole and

Hammon and it cannot be determined at this point that they are entitled to qualified immunity.

### D.    Eighth Amendment Claim

The same does not hold true for Plaintiff's Eighth Amendment claim that his prolonged detention amounted to cruel and unusual punishment.   "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."   *Whitley v. Albers*, 475 U.S. 312, 319 (1986).   There is no clearly established law in the Eighth Circuit that a prolonged detention in violation of a court release order may violate a prisoner's Eighth Amendment right to be free from cruel and unusual punishment.   *See Ricker v. Leapley*, 25 F.3d 1406, 1411 n.2 (8th Cir. 1994) (stating that the court's prior decisions "suggest that we would analyze a refusal-to-release claim under the Due Process Clause, not the Eighth Amendment").   Thus, Cole and Hammon are entitled to qualified immunity on Plaintiff's Eighth Amendment claim and that claim should be dismissed.   *See Handt v. Lynch*, 681 F.3d 939, 945 (8th Cir. 2012) ("[D]efendants are entitled to consideration by the district court of their claims to qualified immunity as to each of the constitutional claims asserted against them.").

### RECOMMENDATION

Based upon the foregoing and all of the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.     Defendant Ramsey County's Motion for Summary Judgment (Doc. No. 19), be **GRANTED** as follows:

   a.     Plaintiff's federal-law claim (Count III of Complaint) against Ramsey County should be dismissed with prejudice;

   b.     Supplemental jurisdiction should not be exercised over Plaintiff's state-law claims against Ramsey County and those claims should be dismissed without prejudice; and

   c.     Ramsey County should be dismissed as a party in this case.

2.     Defendants Roy, Hammon, and Cole's Motion for Judgment on the Pleadings (Doc. No. 13), be **GRANTED IN PART** and **DENIED IN PART** as follows:

   a.     Plaintiff's federal-law claim (Count IV of the Complaint) under 42 U.S.C. § 1983 against Tom Roy should be dismissed with prejudice;

   b.     Supplemental jurisdiction should not be exercised over Plaintiff's state-law claims against Tom Roy and those claims should be dismissed without prejudice;

   c.     Plaintiff's federal-law claims under 42 U.S.C. § 1983 against Defendants Laurie Hammon and Debbie Cole in their official capacity should be dismissed with prejudice;

   d.     Plaintiff's federal-law claim under 42 U.S.C. § 1983 for violation of the Eighth Amendment against Defendants Laurie Hammon and Debbie

Cole in their individual capacity should be dismissed with prejudice; and

      e.      Plaintiff's federal-law claim under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment against Defendants Laurie Hammon and Debbie Cole in their individual capacity should not be dismissed, and the Court should exercise supplemental jurisdiction over Plaintiff's state-law claims against Defendants Hammon and Cole.

Date:    December 4, 2012

                                        *s/ Jeffrey J. Keyes*           
                                          JEFFREY J. KEYES
                                          United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 18, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen** days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.